**UNITED STATES of America, Plaintiff,**

v.

**Robert Alan PROBERT, Defendant.**

No. 89–80136.

United States District Court,
E.D. Michigan, S.D.

May 22, 1989.

Thomas A. Ziolkowski, Asst. U.S. Atty., Detroit, Mich., for U.S.

Harold S. Fried, Steven R. Sonenberg, Fried, Saperstein, DeVine & Kohn, Southfield, Mich., for Probert.

TRANSCRIPT

*Motion to Dismiss*

OPINION OF THE COURT

DUGGAN, District Judge.

Defendant is charged with Importation of Cocaine, 21 U.S.C. § 952(a), § 960(a)(1). Defendant acknowledges, for the purpose of this motion, that on or about March 2, 1989, he entered the United States, from Canada, knowingly in possession of approximately 14 grams of cocaine.

The Government concedes—at least for the purpose of this motion—that defendant's possession of cocaine was for his personal use. The issue, then, that this Court must decide is whether 21 USC Section 952 prohibits an individual from bringing into the United States a controlled substance solely intended for such individual's personal use.

Section 952 provides, in pertinent part, at subsection (a):

"It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of sub-chapter I of this chapter or a narcotic drug in schedule III, IV or V of sub-chapter I of this chapter."

There is no dispute that cocaine is a schedule II narcotic drug under 21 USC § 812.

21 USC Section 951(a)(1) defines the term "import" as follows:

"The term 'import' means, with respect to any article, any bringing in or introduction of such article into any area (whether or not such bringing in or introduction constitutes an importation within the meaning of the tariff laws of the United States)."

Defendant contends that the legislative intent of the statute, that is 21 USC Section 952(a), is to prohibit importation for a "commercial purpose" and that such statute was not intended to punish an individu-

al for bringing a controlled substance into the country for his or her personal use.

Defendant acknowledges that the statute itself does not specifically require that such importation be for a "commercial purpose." Defendant contends, however, that an examination of the legislative intent in adopting 21 USC § 952 indicates that the statute was enacted to control drug trafficking and was, therefore, intended to apply to those individuals who bring controlled substances into the country for distribution.

This Court disagrees.

The language of the statute is clear and unambiguous. It prohibits the "bringing in," 21 USC § 951, of any controlled substance into the United States. For this Court to add to the plain meaning of the statute a requirement that such "bringing in" be for a "commercial purpose," as suggested by defendant, would, in this Court's opinion, be adding language to the statute that plain and simply is not there.

It is not the function of this Court to legislate. If it was the intent of Congress to apply Section 952 to only those individuals who import for commercial purposes, Congress could have easily and clearly said so. Congress has in other legislation, distinguished between conduct that only involved possession and conduct which involved more than possession.

For example, Congress adopted 21 USC Section 844(a) which prohibits possession of a controlled substance and provides as the penalty for such violation of this statute not more than one year imprisonment.

Congress also adopted 21 USC Section 841(a) which prohibits possession with intent to distribute drugs and provides as a penalty for a violation of that statute a significantly greater prison term depending on the controlled substance involved.

Clearly, Congress is capable of, and has in the past, expressed its intent where it wishes to distinguish between possession of a controlled substance and possession with an intent to distribute or commercialize. Whether or not such distinction should be made with respect to the importation of drugs is a decision best left to Congress.

In adopting the legislation prohibiting the importation of controlled substance in Schedule II, Congress has set forth the penalty, and in setting forth the penalty, Congress set forth no minimum penalty. Congress has, with regard to other statutes, set forth a minimum penalty. Had Congress set forth a significant minimum penalty, this Court might be more persuaded that Congress was intending only to reach those seriously involved in drug trafficking.

At the time it adopted this law, Congress left it to the Court to impose the appropriate sentence. In arriving at the appropriate sentence, the Court could, of course, consider, among other factors, as the U.S. Attorney has acknowledged, the extent of the defendant's involvement in the crime.

I recognize that, since the adoption of this statute, sentencing guidelines have been adopted and that to some extent these guidelines affect or play a part in the sentencing. However, at the time this legislation was passed, there was nothing, in this Court's opinion, that would restrict the Court's determination whether to impose a minimum penalty for a minor involvement or a maximum penalty for a significant involvement.

The defendant cites various sections of the legislative history of the statute in question, 21 USC § 952, in support of his argument. Additionally, defendant cites several cases, which defendant argues demonstrates that the legislative intent in enacting Section 952 was to prohibit importation of controlled substances with an intent to distribute.

A thorough review of the cases and the sections of the legislative history cited by defendant reveals no support for defendant's argument. There is simply nothing in the cases or the legislative history cited which indicates that Congress intended the offense of importation of a controlled substance as set forth in Section 952 to require the additional element of an intent to distribute the controlled substance imported.

While this Court is not aware of any Court that has previously dealt precisely

with the issue before this Court, other Court decisions interpreting the statute provide support for this Court's conclusion that the defendant's motion must be denied.

In *U.S. v. Samad*, 754 F.2d 1091, the 4th Circuit in 1984 on page 1096 stated:

"The offense of importation of a controlled substance in the United States requires proof (1) that the substance was imported; (2) that it was imported knowingly and willfully; and (3) that the defendant willfully associated himself with the importation venture. (Citation omitted.) Mere possession of a controlled substance that is of foreign origin, is insufficient to establish importation. (Citation omitted.) A critical element of the offense is that the defendant import the substance or cause it to be imported. (Citation omitted.)"

The Government also cites *U.S. v. Gramlich*, 551 F.2d 1359. In *Gramlich* the District Court in a trial instructed the Jury as follows, quoting from footnote nine of the opinion:

"Now, the term 'import' as used in this statute means with respect to any article, the bringing in or introduction of such an article into any area of the United States. Therefore, it is unlawful to bring into any Customs territory of the United States from any place outside the United States a controlled substance—namely marijuana. And, bringing into a Customs territory includes all of the states of the United States, and that, of course, would include Alabama and the Mississippi Sound. And it is importing within the meaning of this term when it is taken off of the vessel in the navigable waters of Alabama, and thus becomes an introduction into a Customs territory of the United States when that occurs."

The defendant objected and contended that that trial Judge's instructions with regard to the meaning of the word "importation," was erroneous. The 5th Circuit disagreed stating:

"We have examined the charge and find it to be wholly satisfactory." *Gramlich* at 1364.

In *U.S. v. Madalone*, 492 F.Supp 916, the District Court for the Southern District of Florida in 1980 stated:

"*Madalone* argues that he 'cannot be convicted of importing a controlled substance into the United States unless he had the specific intent to *distribute* the substance within the jurisdictional confines of the country.' Memorandum of Law at 3. (Emphasis added) He makes this wholly novel assertion by misreading two Fifth Circuit opinions.

\* \* \* \* \* \*

"In *United States v. Baker* (citation omitted) a Fifth Circuit panel stated that possession with intent to distribute may be 'nearly identical' to the crime of conspiracy to import. However, the defendant has taken both cases out of context.

\* \* \* \* \* \*

"In *Baker*, although the Fifth Circuit drew some analogies between the crimes of conspiracy to import and possession with intent to distribute in concluding that both crimes encompassed activities beyond the three-mile limit but within the twelve-mile contiguous zone, the very quotation cited by the defendant notes that conspiracy to import requires only an intent 'to bring such substances within United States territorial limits' and not an intention to distribute in the United States. Hence, defendant's novel theory about the requirements of importation is without merit."

The Court of Appeals for the 5th Circuit in *U.S. v. Pentapati*, 484 F.2d 450, in 1973, stated at page 451:

"Defendant attacks his conviction for narcotics importation under 21 USC 952(a) on the ground that he was merely an international in-transit passenger and could not, therefore, 'import' any substance in the United States within the meaning of the statute. This argument is utterly without support in the facts. We are not faced here with the case of the true in-transit passenger who is never brought under the control of the customs authorities. It has been stipulated that defendant left a plane in Miami and,

while going through customs, was subjected to a lawful search which netted cocaine. Defendant's allegation of his intention to depart the United States immediately, even if uncontrovertibly established, is of no consequence. The statute looks to the *fact* of bringing in a controlled substance within the territorial jurisdiction of the United States, and not to the alleged importer's subsequent plans."

Defendant cites *U.S. v. Doyal*, 437 F.2d 271, a 5th Circuit case in 1971 involving 21 USC Section 174, the predecessor to Section 952. Defendant quotes from *Doyal* as follows:

"The purpose of 21 USC Section 174 is to stamp out all the traffic in narcotics in the United States except for the legitimate medical purposes by preventing uncontrolled drug importation."

In this Court's opinion, the *Doyal* case supports the Government's position. The Court's quote as set forth above in *Doyal* was in relation to a discussion of the effect of one's acquiring a controlled substance in the United States, subsequently exiting from the United States, and then returning to the United States. Defendant *Doyal* argued that such activity, that is, returning to the United States with the drug, would not violate the statute.

After the Court stated the purpose to stamp out all traffic in narcotics, et cetera, the Court went on to say at page 275:

"Thus, it would make no difference if the drug were taken out and brought back in the United States a number of times. Each time the drug was imported into the United States, a violation would occur."

Defendant also cites *U.S. v. Feld*, 514 F.Supp. 283, Eastern District of New York, 1981, in support of defendant's position. Defendant states in his brief:

"The constructions and holding of the *Feld* Court establishes that the importation legislation was intended to control illicit drug trafficking."

In this Court's opinion, defendant misreads and misinterprets the Court's decision in *Feld*. Contrary to defendant's interpretation, the *Feld* decision clearly supports this Court's conclusion that an attempt to distribute is not necessary.

In *Feld*, the defendants were charged with a conspiracy to violate the federal narcotics law, and alleges part of the conspiracy that the defendants were importing in the United States from places outside and would distribute cocaine. A second count charged defendants with possession of cocaine with intent to distribute. A third count charged the defendants with importation of cocaine.

The District Court in *Feld*, after concluding that the evidence would support a finding of intent to distribute in the United States, nonetheless concluded that it was not necessary to prove an intent to distribute within the U.S. The Court, however, at that point was dealing with 21 USC Section 841 which charged the defendants with possession with intent to distribute.

When dealing with the statute before this Court, that is Section 952, the *Feld* Court said, at page 287:

"There is no requirement that a controlled substance actually clear customs in order to be deemed illegally 'imported.' (Citation omitted) This is so because the statute, 21 USC 952(a), looks to the fact of bringing a controlled narcotic within the territorial jurisdiction of the United States, and not to the alleged importer's subsequent plans. (Citation omitted)"

The *Feld* Court's statement that 21 USC Sections 841, 952 and 955 were adopted to effectuate its treaty obligations under the Single Convention does not, in this Court's opinion, suggest to this Court that Section 952 requires possession with an intent to distribute or to commercialize. On the contrary, as pointed out earlier, Congress specifically adopted Section 841 which prohibits possession with intent to distribute.

In this Court's opinion, a violation of Section 952 occurs when an individual knowingly, voluntarily and intentionally brings into the U.S. a controlled substance unless for a medical scientific or other legitimate use as provided for by the statute.

The alleged importer's subsequent plans for the controlled substance is irrelevant. *U.S. v. Pentapati*, 484 F.2d 450 at 451.

For the reasons indicated above, this Court does hereby deny the defendant's motion to dismiss the indictment.